UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ryan Mack, doing business as Griffin Galleries, | Civil No. 13-197 (SRN/JJG) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Britto Central, Inc., Magical Thinking Art, Inc., and Romero Britto, | |
| Defendants. | |

Michael W. Lowden, Lowden Law Firm, 5101 Thimsen Ave., Suite 204, Minnetonka, MN 55345, for Plaintiff.

Robert B. Bauer and William M. Topka, Dougherty, Molenda, Solfest, Hills & Bauer PA, 7300 W. 147th St., Suite 600, Apple Valley, MN 55124; Kaari Gagnon, Robert M. Einhorn, and Robert Zarco, Zarco Einhorn Salkowski & Brito, PA, 100 SE 2d St., Suite 2700, Miami, FL 33131; and Mikhael Ann Bortz, Britto Central, Inc., 150 NW 25th St., Miami, FL 33127, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on a Motion to Dismiss filed by Defendants Britto Central, Inc., Magical Thinking Art, Inc., and Romero Britto (collectively, "Defendants") [Doc. No. 14]. For the reasons stated below, the Court grants the Motion to Dismiss and dismisses the Complaint [Doc. No. 1] with prejudice.

I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Ryan Mack is an art dealer with a gallery located in Minnesota. (Compl. ¶ 2 [Doc. No. 1].) Defendant Romero Britto is an artist and resident of Florida. (Britto Decl. ¶¶ 3, 5 [Doc. No. 16].) Defendants Magical Thinking Art, Inc., and Britto Central,

Inc., are Florida corporations that sell Defendant Romero Britto's artwork to individuals and art galleries. (Pomares Decl. ¶¶ 5-6 [Doc. No. 17].)

The facts as alleged in the Complaint are as follows. In 2009, Plaintiff purchased what he believed to be a painting by Defendant Romero Britto from a seller in Florida, initially identified as Linda Safira. (Compl. ¶ 12 [Doc. No. 1].) The name Linda Safira turned out to be an alias for a Miami art dealer named Les Roberts and his wife. (Id. ¶ 13.) Over the next several months, Plaintiff purchased 65 paintings from Mr. Roberts, all ostensibly painted by Romero Britto. (Id. ¶ 39.) He re-sold a number of these paintings, including selling one over the internet to an anonymous buyer with the same address as Defendant Magical Thinking Art. (Id. ¶ 17.) Before making the purchase, this anonymous buyer requested a certificate of authenticity for the painting. (Id. ¶ 18.) When Plaintiff called Mr. Roberts about such a certificate, Mr. Roberts told Plaintiff that he could supply certificates for the paintings at a cost of $35 for each certificate. (Id. ¶ 19.) Mr. Roberts eventually supplied what he claimed were certificates of authenticity for the paintings. (Id.)

In November 2009, another art dealer in Florida called Plaintiff and told him that the Britto paintings Plaintiff was selling were not authentic. (Id. ¶ 24.) Mr. Roberts claimed that the other dealer's statements were false. (Id. ¶ 25.) In early December 2009, an employee of Defendant Magical Thinking Art called Plaintiff. (Id. ¶ 26.) She asked Plaintiff to remove the online listings for the paintings because the paintings were forgeries. (Id.) Plaintiff again consulted with Mr. Roberts, who said that Plaintiff should

remove the online listings because Mr. Roberts was concerned that his alleged source for Britto's paintings was nervous about Plaintiff's below-market-price sale of the paintings. (Id. ¶ 27.) Eight days later, Plaintiff's biggest client for the Britto paintings called him to say that Britto Central claimed that none of the Britto paintings Plaintiff sold him were authentic. (Id. ¶ 28.) Mr. Roberts again reassured Plaintiff that the paintings were authentic and purported to communicate directly with Plaintiff's client regarding the paintings' authenticity. (Id. ¶ 29.) The paintings turned out to be forgeries, and Plaintiff was forced to refund his clients' money. (See id.)

On January 24, 2013, Plaintiff filed a Complaint in this Court, seeking relief from Defendants[1] for intentional misrepresentation and negligence. (See id. ¶¶ 66-78.) Defendants filed a motion to dismiss on February 19, 2013 [Doc. No. 14], along with a supporting brief [Doc. No. 15] and several declarations [Doc. Nos. 16-18]. Plaintiff filed an opposition brief [Doc. No. 21] and two affidavits [Doc. Nos. 22-23] on March 12, 2013. On March 19, Defendants filed a reply brief [Doc. No. 26] and two additional declarations [Doc. Nos. 27-28]. This Court held a hearing on the matter on June 27, 2013 [Doc. No. 36].

## II.   DISCUSSION

---

[1] Plaintiff initially asserted claims against Leslie (Les) Roberts, Silvia Castro aka Linda Safira, Coral Gables Galleries, Inc., Britto in the Grove, and Max in the Grove, LLC, as well. However, Plaintiff voluntarily dismissed those parties from this action while the motion to dismiss was pending. (See Notice of Voluntary Dismissal [Doc. No. 33]; Order dated May 23, 2013 [Doc. No. 34].)

3

Defendants' motion is brought alternatively under Rule 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(2) provides for dismissal for lack of personal jurisdiction, and Rule 12(b)(6) provides for dismissal for failure to state a claim upon which relief can be granted. The alternative bases for dismissal are discussed below.

### A.   Personal Jurisdiction

It is a plaintiff's burden to demonstrate, "by a prima facie showing, that personal jurisdiction exists." Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998). The Court can exercise personal jurisdiction over a nonresident defendant if (1) Minnesota's long-arm statute, Minn. Stat. § 543.19, is satisfied; and (2) the exercise of personal jurisdiction does not offend due process. Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693 (8th Cir. 2003). Because Minnesota's long-arm statute extends the personal jurisdiction of Minnesota courts as far as due process allows, In re Minn. Asbestos Litig., 552 N.W.2d 242, 246 (Minn. 1996), the Court need only evaluate whether the exercise of personal jurisdiction comports with the requirements of due process. Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 614 (8th Cir. 1998).

Due process requires that the defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum State are such that [it] should reasonably

4

anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). There must be some act by which the defendant "purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). In contrast, contacts that are merely random, fortuitous, attenuated, or that are the result of "unilateral activity of another party or a third person" will not support personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citation omitted).

To determine the sufficiency of a defendant's contacts with the forum state, the Court examines five factors: (1) the nature and quality of the contacts; (2) the quantity of the contacts; (3) the relation between the contacts and the action; (4) the forum state's interest in the litigation; and (5) the convenience of the parties. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003). The third factor distinguishes between general and specific jurisdiction. Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1432 (8th Cir. 1995). General jurisdiction is present whenever a defendant's contacts with the forum state are so "continuous and systematic" that the defendant may be sued in the forum over any controversy, independent of whether the cause of action has any relationship to the defendant's activities within the state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Specific jurisdiction refers to jurisdiction over causes of action arising from or related to the defendant's actions within the forum state. Burger King, 471 U.S. at 472-73. The fourth

and fifth factors are secondary to the analysis.  <u>Minn. Min. & Mfg. Co. v. Nippon Carbide Indus. Co., Inc.</u>, 65 F.3d 694, 697 (8th Cir. 1995).  In examining these factors, the Court may consider matters outside the pleadings.  <u>Stevens</u>, 146 F.3d at 543, 546; <u>see</u> <u>Land v. Dollar</u>, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised . . . , the court may inquire, by affidavits or otherwise, into the facts as they exist.").   Here, Plaintiff contends that the Court has both specific and general jurisdiction over Defendants.

### 1. Specific Jurisdiction

Plaintiff first argues that the exercise of jurisdiction is appropriate because Defendants' activities in Minnesota gave rise to his claims.[2]  In particular, he claims that the online purchaser whose address was that of Defendant Magical Thinking Art, as well as his telephone conversations with an employee at Magical Thinking Art, establish jurisdiction over Defendants.  As an initial matter, Plaintiff must establish jurisdiction as to each Defendant individually.  See <u>Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.</u>, 943 F. Supp. 1117, 1122 (D. Minn. 1996) ("[E]ach defendant's contacts with the forum state must be assessed individually.").  Plaintiff makes no attempt to do this, but rather attributes the actions of Defendant Magical Thinking Art to the other two Defendants.  This does not suffice to establish jurisdiction as to those other Defendants.

---

[2] Plaintiff also contends that Defendants' request that the Court assist the parties in a potential settlement constitutes a waiver of Defendants' challenge to personal jurisdiction.  However, "courts have hesitated to use settlement discussions as 'contacts' for jurisdictional purposes."  <u>Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.</u>, 89 F.3d 519, 524 (8th Cir. 1996).

Even if the actions of Magical Thinking Art and its employees could be imputed to the other Defendants, however, those actions do not support the exercise of personal jurisdiction. As noted, the only contacts any Defendant had with Minnesota related to this action are an anonymous offer to purchase artwork from Plaintiff's online gallery, a request for certificates of authenticity for the artwork, and two telephone calls from a Magical Thinking Art employee warning Plaintiff that the artwork he was selling was counterfeit. These attenuated contacts are simply not enough in nature, quality, or quantity, to give rise to jurisdiction in Minnesota. See Jacobs Trading, LLC v. Ningbo Hicon Int'l Indus. Co., 872 F. Supp. 2d 838, 843 (D. Minn. 2012) (finding no personal jurisdiction where corporation entered into contract with a Minnesota plaintiff and transacted business in Minnesota).

Plaintiff has not established that any Defendant "aimed its conduct at Minnesota, that [any Defendant] intended to induce commercial activity in Minnesota, or that Minnesota was somehow the focal point for the alleged wrongdoing." Id. at 847. At best, Plaintiff has shown only that employees of Magical Thinking Art communicated with Plaintiff when he was in Minnesota. However, this is not the "purposeful availment" required for specific personal jurisdiction. See Hanson, 357 U.S. at 253. "The mere making of statements to a resident of a forum state is not the same as directing activity toward the forum state." Jacobs Trading, LLC, 872 F. Supp. 2d at 843.

In addition, although Minnesota has an interest in providing a forum for its

citizens, Marshall v. Inn of Madeline Island, 610 N.W.2d 670, 676 (Minn. Ct. App. 2000), that interest cannot outweigh the paucity of contacts Defendants have with Minnesota. See Digi-Tel, 89 F.3d at 525 ("Minnesota's interest in providing its residents with a forum cannot make up for the absence of minimum contacts."). Further, the convenience of the parties weighs against the exercise of jurisdiction, because Plaintiff is the only Minnesota resident. Therefore, the record viewed in the light most favorable to Plaintiff shows that this Court has no specific personal jurisdiction over any Defendant.

### 2. General Jurisdiction

Plaintiff next argues that general jurisdiction over Defendants is appropriate based on Defendants' britto.com website[3] and Defendants' alleged partnership with retailer Ashley's Hallmark of Rochester, Minnesota.[4] General jurisdiction exists when a corporation has "developed 'continuous and systematic general business contacts' with the forum state, '[so] as to render them essentially at home in the forum State.'" Viasys., Inc. v. EBM-Papst St. Georgen GmbH & Co., 646 F.3d 589, 595 (8th Cir. 2011) (quoting

---

[3] According to Defendants, that website belongs to Defendant Britto Central, Inc. (See Reply Brief in Supp. of Defs.' Mot. to Dismiss at 3 n.1 [Doc. No. 26].) For purposes of Defendants' motion, however, the Court will view the facts in the light most favorable to Plaintiff and assume the website is associated with all Defendants.

[4] Indeed, Defendants are not subject to general jurisdiction in Minnesota based on domicile, state of incorporation, or principal place of business. Defendant Britto is a Florida resident who has no recollection of ever having been to Minnesota and who has no property in Minnesota. (Britto Decl. ¶¶ 3-5 [Doc. No. 16].) Similarly, Defendants Britto Central, Inc., and Magical Thinking Art, Inc., are Florida corporations that have no place of business in Minnesota and are not registered to do business in Minnesota. (See Pomares Decl. ¶¶ 5-6 [Doc. No. 17].) Furthermore, neither corporation has any bank accounts, property, or employees in Minnesota. (Id.)

Helicopteros, 466 U.S. at 416; Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011)). When the basis for general jurisdiction is a website, both the "'nature and quality of the contacts'" and the "'quantity of the contacts'" must be analyzed. Lakin v. Prudential Sec., Inc., 348 F.3d 704, 712 (8th Cir. 2003) (citation omitted). In terms of the nature and quality of the contacts, an important consideration is whether the website is interactive or passive. See id. at 711-12. As for the quantity of contacts, a court will consider, for example, the number of times a state's residents accessed the website, the number of times the residents have utilized online services provided through the website, and the number and amount of sales that have occurred through the website.[5] See id. at 712-13. The existence of a passive website that does not target a state's residents and through which a consumer cannot make orders is not, by itself, enough to confer personal jurisdiction. See Jacobs Trading, LLC, 872 F. Supp. 2d at 849 & n.7.

The Court does not have general personal jurisdiction over Defendants. First, the quality and quantity of Defendants' contacts with Minnesota residents through the website are minimal. Consumers were able to purchase items through the website from July 2011 to November 2012. (Second Pomares Decl. ¶ 7 [Doc. No. 27].) However, since November 2012, consumers are only able to place orders over the phone. (Id.) Moreover, the evidence submitted shows that, while 2,688 Minnesota-registered

---

[5] Plaintiff asserted in his opposition brief that limited discovery is necessary to access this information about Defendants' website. (Pl.'s Mem of Law in Opp. to Defs.' Mot. to Dismiss at 9 [Doc. No. 21].) As discussed below, Defendants have supplied that information. Therefore, no additional discovery is necessary.

computers accessed the website between January 2011 and January 2013,[6] (Arencibia Decl. ¶ 6 [Doc. No. 28]), only 21 items ordered through the website between July 2011 and December 2012 were shipped to Minnesota, (Second Pomares Decl. ¶ 7 [Doc. No. 27]). Those 21 items accounted for a fraction of one percent of the total orders placed on the website. (Id.) In addition, the website did not advertise for or solicit business from residents of Minnesota. (Arencibia Decl. ¶ 4 [Doc. No. 28].) A passive website, such as this, is not sufficient to support the exercise of general jurisdiction over Defendants.

Second, while Defendants contend that they have no relationship with the alleged retailer Ashley's Hallmark, (see Second Pomares Decl. ¶¶ 8-9 [Doc. No. 27]), that minimal relationship would not render Defendants essentially at home in Minnesota even if it did exist. Thus, the evidence viewed in the light most favorable to Plaintiff fails to demonstrate that an exercise of general jurisdiction is proper. Because Plaintiff cannot establish that this Court can properly exercise either specific or general personal jurisdiction over Defendants, this case must be dismissed.

### B.    Failure to State a Claim

In the alternative, Plaintiff's Complaint must be dismissed for failure to state a claim against Defendants upon which relief can be granted. When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need

---

[6] Defendant Britto Central, Inc., only began using software to track web traffic for britto.com in January 2011. (Arencibia Decl. ¶ 5 [Doc. No. 28].)

not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiff draws from the facts pled. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

The Complaint in this case states two claims against Defendants: intentional misrepresentation and negligence. The Court will discuss each claim in turn.

### 1. Misrepresentation

In Count 4 of his Complaint, Plaintiff states the following in support of his claim for intentional misrepresentation:

> 68. Defendant[s] . . . in the course of their business/profession supplied false information to Plaintiff in the form of pretending to be a legitimate buyer[7] with regard to the purchase of fraudulent Britto artwork from Plaintiff that they knew was forged . . . and failed to use reasonable care or competence in

---

[7] Defendants disclaim any association with this anonymous buyer. (Defs.' Mem. at 24 n.6 [Doc. No. 15].) For purposes of this motion, however, the Court assumes the facts alleged in the Complaint are true.

11

> obtaining the information directly from Plaintiff or communicating it to Plaintiff until nearly four months after the purchase of such artwork using a fake name. As a result, Plaintiff relied on the information submitted by Defendant[s] . . . that the questions they had about the artwork were answered and that the artwork was legitimate and continued to sale [sic] such artwork to its customers.
>
> 69. Defendants . . . knew the representations regarding the artwork they purchased from Plaintiff were forged and the certificates of authenticity were false and with no reasonable ground for believing them to be true, and omitted, or caused to be omitted, material information that the Defendants had a duty to disclose to Plaintiff that such was the case and that the failure to disclose caused damage to Plaintiff in the form of continuing to sale [sic] forged Britto artwork . . . .
>
> 70. Plaintiff justifiably relied on all of the named Defendants' material misrepresentations and omissions, which proximately caused damage to Plaintiff.

(Compl. ¶¶ 68-70 [Doc. No. 1].)   As Defendants note, this claim appears to be a claim for negligent, not intentional, misrepresentation. (Mem. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 19 n.4 [Doc. No. 15].) Negligent misrepresentation under Minnesota law is a false representation made "in the course of [one's] business, profession or employment." Williams v. Smith, 820 N.W.2d 807, 815 (Minn. 2012) (quoting Restatement (Second) of Torts § 552)).  This language is repeated nearly verbatim in the Complaint. But even if, as Plaintiff insists, his claim is one for intentional misrepresentation, he has failed to sufficiently allege that Defendants' alleged misrepresentations are actionable.

### a.     Negligent Misrepresentation

Under Minnesota law, a plaintiff must establish the following elements to prevail on a negligent misrepresentation claim: "(1) a duty of care owed by the defendant to the

plaintiff; (2) the defendant supplies false information to the plaintiff; (3) justifiable reliance upon the information by the plaintiff; and (4) failure by the defendant to exercise reasonable care in communicating the information." Williams, 820 N.W.2d at 815 (citation omitted).  Thus, in order for liability to arise under a theory of negligent misrepresentation, the defendant must owe the plaintiff a duty.  This is true even if the alleged misrepresentation is an omission. Sailors v. N. States Power Co., 4 F.3d 610, 614 n.5 (8th Cir. 1993) (citing L&H Airco, Inc. v. Rapistan Corp., 446 N.W.2d 372, 378 n.3 (Minn. 1989)).

"[C]ertain legal relationships give rise to a duty of care, including accountant/client, attorney/client, and fiduciary relationships involving guardians, executors, and directors of corporations." Minn. Pipe & Equip. Co. v. Ameron Int'l Corp., ___ F. Supp. 2d ___, 2013 WL 1346152, at *6 (D. Minn. Apr. 3, 2013) (citing Williams, 820 N.W.2d at 816).  While other types of relationships may also give rise to a duty of care, id., the nature of the relationship between sophisticated parties on opposite sides of a commercial transaction generally does not give rise to such a duty.  For example, in Williams v. Smith, the Minnesota Supreme Court found that no duty of care was owed by a prospective employer to a prospective employee for purposes of a negligent misrepresentation claim because there was no professional or fiduciary relationship, the parties were sophisticated business people watching out for their own interests, and there was no public policy that supported imposition of a duty of care. 820 N.W.2d at 818-19.  Likewise, in Safeco Insurance Co. of America v. Dain Bosworth Inc.,

13

the Minnesota Court of Appeals found that an underwriter owed no duty of care to a credit enhancer because the underwriter was not supplying information for the credit enhancer's guidance and because they were sophisticated equals negotiating a commercial transaction.  531 N.W.2d 867, 872 (Minn. Ct. App. 1995).

Defendants cite Coach, Inc. v. Angela's Boutique, Civ. Action No. H-10-1108, 2011 WL 2446387 (S.D. Tex. June 15, 2011), in support of their motion.  In that case, Coach hired an investigator to assist in its efforts to protect its trademarks.  Id. at *1.  The investigator's employees visited Angela's Boutique and observed imitation Coach products but did not inform Angela's Boutique that there was any problem with the sale of those products and did not instruct Angela's Boutique to stop selling them.  Id.  After being sued by Coach for trademark infringement, Angela's Boutique sued the investigator for negligence, fraud, and negligent misrepresentation.[8]  Id.  Angela's Boutique claimed that the investigator was liable for the continued sale of the products because his employees' visits led it to believe that there was not a problem with the products, and that the investigator had a duty to notify Angela's Boutique that it was not permitted to sell the products.  Id. at *1, 5.  The court found both that Angela's Boutique had not pled the existence of any special relationship between it and the investigator that gave rise to a duty to disclose the illegal nature of Angela's Boutique's conduct or a duty to control its conduct, and that the investigator in fact had no such duties.  Id. at *5-6.  The court,

---

[8] The elements of those claims are similar under Texas and Minnesota law, and each claim requires that the defendant owed the plaintiff a duty.  See Coach, 2011 WL 2446387, at *4.

14

therefore, held that Angela's Boutique failed to state a claim upon which relief could be granted. Id. at *6.

Coach is directly on point. Like Angela's Boutique, Plaintiff here does not allege in his Complaint the existence of any special relationship between himself and Defendants that might have given rise to a duty owed to him by Defendants to disclose that the artwork was counterfeit, assuming Defendants knew at the time that the artwork was counterfeit. Nor could Plaintiff allege such a relationship. At most, Plaintiff and Defendants' relationship was that of sophisticated parties on opposite sides of a commercial transaction, like the parties in Williams. Plaintiff and Defendants were looking out for their own interests, and Defendants were not supplying information to guide Plaintiff in a transaction. As noted above, that type of relationship does not give rise to a duty of care. Therefore, Plaintiff has failed to state a claim against Defendants for negligent misrepresentation.

### b. Intentional Misrepresentation

Under Minnesota law, a cause of action for intentional misrepresentation is comprised of the following elements:

(1) There must be a representation;
(2) That representation must be false;
(3) It must have to do with a past or present fact;
(4) That fact must be material;
(5) It must be susceptible of knowledge;
(6) The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false;
(7) The representer must intend to have the other person induced to act, or justified in acting upon it;

>   (8)   That person must be so induced to act or so justified in acting;
>   (9)   That person's action must be in reliance upon the representation;
>   (10)  That person must suffer damage;
>   (11)  That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

Florenzano v. Olson, 387 N.W.2d 168, 174 n.4 (Minn. 1986) (citations omitted).  In this case, Plaintiff has not pled that Defendants _intended_ to have Plaintiff act upon any alleged misrepresentations or omissions.  Moreover, the anonymous buyer's purchase of the artwork and request for certificates of authenticity, even if the buyer knew that the artwork was forged, cannot give rise to a claim for intentional misrepresentation because the alleged representations were not representations of a past or present fact.  Therefore, Plaintiff has failed to state a claim against Defendants for intentional misrepresentation.

### 2.   Negligence

Similarly, Plaintiff has failed to state a claim for negligence.  Under Minnesota law, "[t]he essential elements of a negligence claim are:  (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury."  Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn. 1995) (citation omitted).  Thus, like a claim for negligent misrepresentation, a claim for negligence requires the existence of a duty of care owed by the defendant to the plaintiff.

Here, Count Five of the Complaint alleges:

> 74. That Defendants . . . were aware of . . . fraudulent activities . . . well before disclosing such activities to Plaintiff but failed to disclose these activities for at least four months causing Plaintiff to continue to sell fraudulent Britto works of art to its customers.
>
> 75. Defendants . . . affirmatively created a duty to obtain all fraudulent art

> work sold by . . . Leslie (Les) Roberts; Silvia Castro aka Linda Safira; Coral Gables Galleries, Inc.; and Britto in the Grove and have them destroyed when they brought a lawsuit against [those parties]. Defendant[s] . . . specifically requested an Order from the court to that affect [sic].
>
> 76. Defendants . . . failed to honor that duty to obtain all the fraudulent artwork and instead settled . . . without obtaining the fraudulent art work they knew existed in the market place and was in the hands of unknowing consumers.
>
> . . .
>
> 78. As a result of this breach of duty, Plaintiff has sustained economic damages resulting from the sale of fraudulent pieces of art as well as damage to his reputation . . . .

(Compl. ¶¶ 74-78 [Doc. No. 1].) To the extent Plaintiff is alleging Defendants were negligent for failing to disclose information, he appears to be stating another claim for negligent misrepresentation. For the reasons set forth above, that claim fails.

To the extent Plaintiff is alleging Defendants were negligent for failing to obtain and destroy the fraudulent artwork, Plaintiff's claim still fails. Again, Plaintiff has not alleged the existence of any special relationship that gave rise to a duty of care. Nor has Plaintiff pointed to any precedent imposing a duty on an artist to obtain and destroy all forgeries of his artwork. Accordingly, Plaintiff has failed to state a claim against Defendants for negligence.

### C. Conclusion

Plaintiff has failed to establish that the Court can properly exercise jurisdiction over Defendants in this matter. Even if the exercise of jurisdiction were appropriate, however, Plaintiff's allegations do not state a claim on which relief may be granted.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion to Dismiss [Doc. No. 14] is **GRANTED**; and

2. The Complaint [Doc. No. 1] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   August 6, 2013                              s/Susan Richard Nelson
                                                                 SUSAN RICHARD NELSON
                                                                 United States District Judge