UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ryan Mack, doing business as Griffin Galleries, | Civil No. 13-197 (SRN/JJG) |
| Plaintiff, | |
| v. | **AMENDED MEMORANDUM OPINION AND ORDER** |
| Britto Central, Inc., Magical Thinking Art, Inc., and Romero Britto, | |
| Defendants. | |

Michael W. Lowden, Lowden Law Firm, 5101 Thimsen Ave., Suite 204, Minnetonka, MN 55345, for Plaintiff.

Robert B. Bauer and William M. Topka, Dougherty, Molenda, Solfest, Hills & Bauer PA, 7300 W. 147th St., Suite 600, Apple Valley, MN 55124; Kaari Gagnon, Robert M. Einhorn, and Robert Zarco, Zarco Einhorn Salkowski & Brito, PA, 100 SE 2d St., Suite 2700, Miami, FL 33131; and Mikhael Ann Bortz, Britto Central, Inc., 150 NW 25th St., Miami, FL 33127, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on a Motion to Dismiss filed by Defendants Britto Central, Inc., Magical Thinking Art, Inc., and Romero Britto (collectively, "Defendants") [Doc. No. 14]. For the reasons stated below, the Court grants the Motion to Dismiss and dismisses the Complaint [Doc. No. 1] without prejudice.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Ryan Mack is an art dealer with a gallery located in Minnesota. (Compl. ¶ 2 [Doc. No. 1].) Defendant Romero Britto is an artist and resident of Florida. (Britto Decl. ¶¶ 3, 5 [Doc. No. 16].) Defendants Magical Thinking Art, Inc., and Britto Central,

Inc., are Florida corporations that sell Defendant Romero Britto's artwork to individuals and art galleries. (Pomares Decl. ¶¶ 5-6 [Doc. No. 17].)

The facts as alleged in the Complaint are as follows. In 2009, Plaintiff purchased what he believed to be a painting by Defendant Romero Britto from a seller in Florida, initially identified as Linda Safira. (Compl. ¶ 12 [Doc. No. 1].) The name Linda Safira turned out to be an alias for a Miami art dealer named Les Roberts and his wife. (Id. ¶ 13.) Over the next several months, Plaintiff purchased 65 paintings from Mr. Roberts, all ostensibly painted by Romero Britto. (Id. ¶ 39.) He re-sold a number of these paintings, including selling one over the internet to an anonymous buyer with the same address as Defendant Magical Thinking Art. (Id. ¶ 17.) Before making the purchase, this anonymous buyer requested a certificate of authenticity for the painting. (Id. ¶ 18.) When Plaintiff called Mr. Roberts about such a certificate, Mr. Roberts told Plaintiff that he could supply certificates for the paintings at a cost of $35 for each certificate. (Id. ¶ 19.) Mr. Roberts eventually supplied what he claimed were certificates of authenticity for the paintings. (Id.)

In November 2009, another art dealer in Florida called Plaintiff and told him that the Britto paintings Plaintiff was selling were not authentic. (Id. ¶ 24.) Mr. Roberts claimed that the other dealer's statements were false. (Id. ¶ 25.) In early December 2009, an employee of Defendant Magical Thinking Art called Plaintiff. (Id. ¶ 26.) She asked Plaintiff to remove the online listings for the paintings because the paintings were forgeries. (Id.) Plaintiff again consulted with Mr. Roberts, who said that Plaintiff should

remove the online listings because Mr. Roberts was concerned that his alleged source for Britto's paintings was nervous about Plaintiff's below-market-price sale of the paintings. (Id. ¶ 27.) Eight days later, Plaintiff's biggest client for the Britto paintings called him to say that Britto Central claimed that none of the Britto paintings Plaintiff sold him were authentic. (Id. ¶ 28.) Mr. Roberts again reassured Plaintiff that the paintings were authentic and purported to communicate directly with Plaintiff's client regarding the paintings' authenticity. (Id. ¶ 29.) The paintings turned out to be forgeries, and Plaintiff was forced to refund his clients' money. (See id.)

On January 24, 2013, Plaintiff filed a Complaint in this Court, seeking relief from Defendants[1] for intentional misrepresentation and negligence. (See id. ¶¶ 66-78.) Defendants filed a motion to dismiss on February 19, 2013 [Doc. No. 14], along with a supporting brief [Doc. No. 15] and several declarations [Doc. Nos. 16-18]. Plaintiff filed an opposition brief [Doc. No. 21] and two affidavits [Doc. Nos. 22-23] on March 12, 2013. On March 19, Defendants filed a reply brief [Doc. No. 26] and two additional declarations [Doc. Nos. 27-28]. This Court held a hearing on the matter on June 27, 2013 [Doc. No. 36].

## II. DISCUSSION

---

[1] Plaintiff initially asserted claims against Leslie (Les) Roberts, Silvia Castro aka Linda Safira, Coral Gables Galleries, Inc., Britto in the Grove, and Max in the Grove, LLC, as well. However, Plaintiff voluntarily dismissed those parties from this action while the motion to dismiss was pending. (See Notice of Voluntary Dismissal [Doc. No. 33]; Order dated May 23, 2013 [Doc. No. 34].)

3

Defendants' motion is brought alternatively under Rule 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(2) provides for dismissal for lack of personal jurisdiction, and Rule 12(b)(6) provides for dismissal for failure to state a claim upon which relief can be granted.  Because the Court finds that it lacks personal jurisdiction over Defendants, it will not address their alternative ground for dismissal.

It is a plaintiff's burden to demonstrate, "by a prima facie showing, that personal jurisdiction exists." Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998).  The Court can exercise personal jurisdiction over a nonresident defendant if (1) Minnesota's long-arm statute, Minn. Stat. § 543.19, is satisfied; and (2) the exercise of personal jurisdiction does not offend due process.  Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693 (8th Cir. 2003).  Because Minnesota's long-arm statute extends the personal jurisdiction of Minnesota courts as far as due process allows, In re Minn. Asbestos Litig., 552 N.W.2d 242, 246 (Minn. 1996), the Court need only evaluate whether the exercise of personal jurisdiction comports with the requirements of due process.  Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 614 (8th Cir. 1998).

Due process requires that the defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted).  Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson,

4

444 U.S. 286, 297 (1980). There must be some act by which the defendant "purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). In contrast, contacts that are merely random, fortuitous, attenuated, or that are the result of "unilateral activity of another party or a third person" will not support personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citation omitted).

To determine the sufficiency of a defendant's contacts with the forum state, the Court examines five factors: (1) the nature and quality of the contacts; (2) the quantity of the contacts; (3) the relation between the contacts and the action; (4) the forum state's interest in the litigation; and (5) the convenience of the parties. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003). The third factor distinguishes between general and specific jurisdiction. Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1432 (8th Cir. 1995). General jurisdiction is present whenever a defendant's contacts with the forum state are so "continuous and systematic" that the defendant may be sued in the forum over any controversy, independent of whether the cause of action has any relationship to the defendant's activities within the state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Specific jurisdiction refers to jurisdiction over causes of action arising from or related to the defendant's actions within the forum state. Burger King, 471 U.S. at 472-73. The fourth and fifth factors are secondary to the analysis. Minn. Min. & Mfg. Co. v. Nippon Carbide

Indus. Co., Inc., 65 F.3d 694, 697 (8th Cir. 1995). In examining these factors, the Court may consider matters outside the pleadings. Stevens, 146 F.3d at 543, 546; see Land v. Dollar, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised . . . , the court may inquire, by affidavits or otherwise, into the facts as they exist."). Here, Plaintiff contends that the Court has both specific and general jurisdiction over Defendants.

### A. Specific Jurisdiction

Plaintiff first argues that the exercise of jurisdiction is appropriate because Defendants' activities in Minnesota gave rise to his claims.[2] In particular, he claims that the online purchaser whose address was that of Defendant Magical Thinking Art, as well as his telephone conversations with an employee at Magical Thinking Art, establish jurisdiction over Defendants. As an initial matter, Plaintiff must establish jurisdiction as to each Defendant individually. See Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc., 943 F. Supp. 1117, 1122 (D. Minn. 1996) ("[E]ach defendant's contacts with the forum state must be assessed individually."). Plaintiff makes no attempt to do this, but rather attributes the actions of Defendant Magical Thinking Art to the other two Defendants. This does not suffice to establish jurisdiction as to those other Defendants.

Even if the actions of Magical Thinking Art and its employees could be imputed to

---

[2] Plaintiff also contends that Defendants' request that the Court assist the parties in a potential settlement constitutes a waiver of Defendants' challenge to personal jurisdiction. However, "courts have hesitated to use settlement discussions as 'contacts' for jurisdictional purposes." Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 524 (8th Cir. 1996).

the other Defendants, however, those actions do not support the exercise of personal jurisdiction. As noted, the only contacts any Defendant had with Minnesota related to this action are an anonymous offer to purchase artwork from Plaintiff's online gallery, a request for certificates of authenticity for the artwork, and two telephone calls from a Magical Thinking Art employee warning Plaintiff that the artwork he was selling was counterfeit. These attenuated contacts are simply not enough in nature, quality, or quantity, to give rise to jurisdiction in Minnesota. See Jacobs Trading, LLC v. Ningbo Hicon Int'l Indus. Co., 872 F. Supp. 2d 838, 843 (D. Minn. 2012) (finding no personal jurisdiction where corporation entered into contract with a Minnesota plaintiff and transacted business in Minnesota).

Plaintiff has not established that any Defendant "aimed its conduct at Minnesota, that [any Defendant] intended to induce commercial activity in Minnesota, or that Minnesota was somehow the focal point for the alleged wrongdoing." Id. at 847. At best, Plaintiff has shown only that employees of Magical Thinking Art communicated with Plaintiff when he was in Minnesota. However, this is not the "purposeful availment" required for specific personal jurisdiction. See Hanson, 357 U.S. at 253. "The mere making of statements to a resident of a forum state is not the same as directing activity toward the forum state." Jacobs Trading, LLC, 872 F. Supp. 2d at 843.

In addition, although Minnesota has an interest in providing a forum for its citizens, Marshall v. Inn of Madeline Island, 610 N.W.2d 670, 676 (Minn. Ct. App. 2000), that interest cannot outweigh the paucity of contacts Defendants have with

Minnesota. See Digi-Tel, 89 F.3d at 525 ("Minnesota's interest in providing its residents with a forum cannot make up for the absence of minimum contacts."). Further, the convenience of the parties weighs against the exercise of jurisdiction, because Plaintiff is the only Minnesota resident. Therefore, the record viewed in the light most favorable to Plaintiff shows that this Court has no specific personal jurisdiction over any Defendant.

### B. General Jurisdiction

Plaintiff next argues that general jurisdiction over Defendants is appropriate based on Defendants' britto.com website[3] and Defendants' alleged partnership with retailer Ashley's Hallmark of Rochester, Minnesota.[4] General jurisdiction exists when a corporation has "developed 'continuous and systematic general business contacts' with the forum state, '[so] as to render them essentially at home in the forum State.'" Viasys., Inc. v. EBM-Papst St. Georgen GmbH & Co., 646 F.3d 589, 595 (8th Cir. 2011) (quoting Helicopteros, 466 U.S. at 416; Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011)). When the basis for general jurisdiction is a website, both the

---

[3] According to Defendants, that website belongs to Defendant Britto Central, Inc. (See Reply Brief in Supp. of Defs.' Mot. to Dismiss at 3 n.1 [Doc. No. 26].) For purposes of Defendants' motion, however, the Court will view the facts in the light most favorable to Plaintiff and assume the website is associated with all Defendants.

[4] Indeed, Defendants are not subject to general jurisdiction in Minnesota based on domicile, state of incorporation, or principal place of business. Defendant Britto is a Florida resident who has no recollection of ever having been to Minnesota and who has no property in Minnesota. (Britto Decl. ¶¶ 3-5 [Doc. No. 16].) Similarly, Defendants Britto Central, Inc., and Magical Thinking Art, Inc., are Florida corporations that have no place of business in Minnesota and are not registered to do business in Minnesota. (See Pomares Decl. ¶¶ 5-6 [Doc. No. 17].) Furthermore, neither corporation has any bank accounts, property, or employees in Minnesota. (Id.)

8

"'nature and quality of the contacts'" and the "'quantity of the contacts'" must be analyzed. Lakin v. Prudential Sec., Inc., 348 F.3d 704, 712 (8th Cir. 2003) (citation omitted). In terms of the nature and quality of the contacts, an important consideration is whether the website is interactive or passive. See id. at 711-12. As for the quantity of contacts, a court will consider, for example, the number of times a state's residents accessed the website, the number of times the residents have utilized online services provided through the website, and the number and amount of sales that have occurred through the website.[5]  See id. at 712-13. The existence of a passive website that does not target a state's residents and through which a consumer cannot make orders is not, by itself, enough to confer personal jurisdiction. See Jacobs Trading, LLC, 872 F. Supp. 2d at 849 & n.7.

The Court does not have general personal jurisdiction over Defendants. First, the quality and quantity of Defendants' contacts with Minnesota residents through the website are minimal. Consumers were able to purchase items through the website from July 2011 to November 2012. (Second Pomares Decl. ¶ 7 [Doc. No. 27].) However, since November 2012, consumers are only able to place orders over the phone. (Id.) Moreover, the evidence submitted shows that, while 2,688 Minnesota-registered

---

[5] Plaintiff asserted in his opposition brief that limited discovery is necessary to access this information about Defendants' website. (Pl.'s Mem of Law in Opp. to Defs.' Mot. to Dismiss at 9 [Doc. No. 21].) As discussed below, Defendants have supplied that information. Therefore, no additional discovery is necessary.

9

computers accessed the website between January 2011 and January 2013,[6] (Arencibia Decl. ¶ 6 [Doc. No. 28]), only 21 items ordered through the website between July 2011 and December 2012 were shipped to Minnesota, (Second Pomares Decl. ¶ 7 [Doc. No. 27]). Those 21 items accounted for a fraction of one percent of the total orders placed on the website. (Id.) In addition, the website did not advertise for or solicit business from residents of Minnesota. (Arencibia Decl. ¶ 4 [Doc. No. 28].) A passive website, such as this, is not sufficient to support the exercise of general jurisdiction over Defendants.

Second, while Defendants contend that they have no relationship with the alleged retailer Ashley's Hallmark, (see Second Pomares Decl. ¶¶ 8-9 [Doc. No. 27]), that minimal relationship would not render Defendants essentially at home in Minnesota even if it did exist. Thus, the evidence viewed in the light most favorable to Plaintiff fails to demonstrate that an exercise of general jurisdiction is proper. Because Plaintiff cannot establish that this Court can properly exercise either specific or general personal jurisdiction over Defendants, this case must be dismissed.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion to Dismiss [Doc. No. 14] is **GRANTED**; and
2. The Complaint [Doc. No. 1] is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 21, 2014                             s/Susan Richard Nelson
                                                  SUSAN RICHARD NELSON
                                                  United States District Judge

---

[6] Defendant Britto Central, Inc., only began using software to track web traffic for britto.com in January 2011. (Arencibia Decl. ¶ 5 [Doc. No. 28].)